## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x

**KYLE MCDONALD,**

                Plaintiff,                        **JURY TRIAL DEMANDED**

        v.                                Case No. 1:22-cv-4164

**WILLIAMS-SONOMA, INC.,**

                Defendant

------------------------------------------------------x

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kyle McDonald, by and through undersigned counsel, hereby complains against Defendant Williams-Sonoma, Inc. ("WSI") as follows:

### INTRODUCTION

1.    This case arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-502(a) *et seq.*

2.    This case challenges the Defendant's willful, knowing, and/or reckless violations of Title VII and the New York City Human Rights Law ("NYCHRL") by subjecting Plaintiff to a hostile and sexually harassing work environment, engaging in quid pro quo sexual harassment, and retaliating against Plaintiff for exercising his rights protected by New York law.

## JURISDICTION, PARTIES, AND VENUE

3.      Plaintiff Kyle McDonald ("Plaintiff" or "McDonald") is a United States citizen residing in the City of Brooklyn and State of New York.

4.      Defendant Williams-Sonoma, Inc. ("WSI") is a Delaware corporation headquartered in San Francisco, California with offices in New York.

5.      At all times herein relevant, Plaintiff was an employee of WSI, which was an employer within the meaning of Title VII and the NYCHRL.

6.      At all times herein relevant, WSI employed more than 500 individuals.

7.      Jurisdiction and venue are proper in this Court because Plaintiff lived in New York and worked in WSI's Brooklyn-based office.

8.      Plaintiff filed a timely Charge of Discrimination against WSI with the New York State Division of Human Rights ("NYSDHR") on or about January 15, 2021, alleging sexual harassment and retaliation.

9.      New York is a deferral state and Plaintiff requested that his Charge of Discrimination be dual filed with the EEOC.

10.     Per Executive Orders 202.8 and 202.67 of the Governor of the State of New York, the statute of limitations for Plaintiff's claims was tolled from March 20, 2020 to November 3, 2020 due to the COVID-19 pandemic.

11.     On or about April 4, 2022, the NYSDHR issued an administrative dismissal and annulment of Plaintiff's claims so he could pursue his remedies in Court.

12.     Under the NYCHRL Chapter 5, § 8-502(b), where a complaint filed with the NYSDHR is dismissed pursuant to subdivision 297.9 for administrative convenience or on the grounds that such person's election of administrative remedies is annulled, an aggrieved person shall maintain all rights to commence a civil action pursuant to Chapter 5 as if no such complaint had been filed.

13.     Under the NYCHRL Chapter 5, § 8-502(d), a civil action must be commenced within three years after the alleged unlawful discrimination practice or act of discriminatory harassment occurred. Upon the filing and during the pendency of a complaint with the NYSDHR, the three-year limitations period shall be tolled.

## BACKGROUND FACTS

14.     Plaintiff Kyle McDonald ("McDonald") is a 31-year-old male with decades of experience in the retail/interior design industry.

15.     McDonald began working in various sales associate positions for Williams-Sonoma, Inc. ("WSI") or related brands in 2009.

16.     By 2012, McDonald had worked his way up to Assistant Store Manager of a Pottery Barn Teen store in New York City.

17.     In 2014, McDonald began working for WSI as an Associate Project Manager in the Retail Operations Department for West Elm, reporting to Director of Retail Operations Julie Unis. He earned $28.85 per hour in this role.

18.     WSI is a global brand of retail consumer products that includes home furnishings, retail stores, individual and corporate design services, and more. Brands like Pottery Barn and West Elm are included under the WSI umbrella.

19.     WSI has more than 20,000 employees worldwide.

20.     McDonald lives in New York, NY and Brooklyn was his work location.

21.     On or about October 30, 2018, WSI promoted McDonald to the position of Program Manager, Trade within the Trade + Contract Department. As of November 5, 2018, when McDonald's promotion became effective, he reported directly to the VP of Trade/Contract, Josie Driscoll ("Driscoll").

22.     McDonald's compensation in the new role of Program Manager, Trade was $95,000.00 per year, plus a target bonus opportunity of 10% of his base salary.

23.     McDonald performed his duties satisfactorily the entire time he worked for WSI. He earned awards and had great customer and peer feedback prior to the time he reported sexual harassment to HR.

24.     On November 14, 2018, McDonald approached his direct supervisor (Driscoll) and asked her to touch base. Driscoll was dismissive and told McDonald she was unavailable. Driscoll asked McDonald to reschedule to the following Wednesday. Up to that point, Driscoll had utterly failed to schedule regular check ins with McDonald, which she called a "touch base." A "touch base" at WSI is intended for managers to check in with the team and people they supervise in order to mentor and provide updates on priorities or areas of focus.

25.     McDonald touched base with Driscoll again on December 14, 2018. During this meeting, Driscoll commented that McDonald had done a great job "jumping in" to his new role.

26.     Driscoll rescheduled the January 14, 2019 touch base meeting with McDonald.

27.      On February 14, 2019, Driscoll said she was unavailable and would have to speak with McDonald on the weekend or Monday morning. This was a typical pattern of behavior for Driscoll, who provided little to no direction to McDonald about the role. McDonald provided Driscoll with some items to be reviewed with her about ways to streamline store processes.

28.     Over the next few months, Driscoll behaved in a volatile and at times inappropriate manner toward McDonald and his colleagues, sometimes to the point of being abusive. She was often unavailable and did not provide managerial support. Sometimes Driscoll would praise employees and have positive interactions with them, but other times Driscoll made offensive comments and berated employees.

29.     On one occasion, when McDonald was talking about job specific examples of how WSI could improve retail sales, she stuck her finger in McDonald's face and said "INVALID" in a loud and aggressive tone. She had a habit of humiliating employees in front of their colleagues.

30.     On or about March 26, 2019, McDonald reported to HR representative Nicole Mighty ("Mighty") that he felt Driscoll was extremely aggressive and difficult to work with. McDonald specifically asked HR for advice on how to handle working with Driscoll. Mighty told McDonald to explain specific situations and use "I" statements versus "you" statements with Driscoll.

31.   After McDonald made the above complaint to HR, Driscoll's behavior toward him temporarily improved. But after a couple of weeks, she became volatile and degrading again.

32.   In May of 2019, McDonald attended a trade show in Las Vegas for work. He attended a Celine Dion concert with a colleague named Julie. Driscoll also attended the concert with her close friend and subordinate, East Coast Sales Director Ryan Haggett ("Haggett").

33.   Haggett is a gay man.

34.   McDonald is also a gay man.

35.    During after-hours work events, Driscoll tended to get intoxicated and belligerent, demanding that her subordinates drink to excess with her. After the concert, McDonald felt bullied into going out for drinks with Driscoll and several other colleagues. It was late and McDonald said that he wanted to take an Uber back to the hotel. Driscoll accused McDonald of not being a "team player." When McDonald explained that he was just tired, Driscoll angrily cut him off and said: "I don't want to hear it."

36.   When the team returned from Las Vegas, McDonald attended a designer event in New York on May 21, 2019 for the launch of WSI's partnership with Paloma.

37.   McDonald attended the designer event on May 21, 2019 with several sales associates and Driscoll's very close friend, East Coast Sales Director Ryan Haggett.

38.     The team wanted to get a group photo in front of the store, so they all posed together with Haggett standing behind McDonald.

39.     As they posed for the photo, McDonald felt something brush and rub against his backside.

40.     At first, McDonald thought that Haggett might be holding a rolled-up piece of paper, but he quickly realized that Haggett had grabbed his buttocks and was rubbing it with his hand.

41.     After Haggett groped McDonald's buttocks, the team went back into the store where the event was being held.

42.     Back inside, Haggett walked toward McDonald and winked, causing McDonald to realize that Haggett had groped him intentional, as an overt sexual advance.

43.     McDonald felt incredibly uncomfortable about Haggett's sexual advance, which was unwanted and unprovoked.

44.     For the month after this happened, Haggett was traveling and not in the Brooklyn office with McDonald.

45.     However, McDonald was so uncomfortable and anxious about working with Haggett that, when Haggett returned from traveling about a month later, McDonald reported the sexual harassment to his manager, Josie Driscoll, who was a close friend of Haggett's.

46.     Driscoll contacted WSI's HR department, which at the time was based in the Portland, Oregon office. Driscoll informed McDonald that HR representative

Christine Struckman ("Struckman") would contact him soon to discuss the complaint of sexual harassment.

47.     Struckman spoke with McDonald the following day. McDonald went into detail describing what happened on the evening of May 21, 2019.

48.     Struckman asked McDonald various questions, including whether there were witnesses to the harassment and whether anything else had happened with Haggett. The answer to both questions was no.

49.     Struckman explained the next steps in the process and told McDonald to keep his distance from Haggett and politely ignore him if he tried to approach McDonald to discuss the complaint. Struckman said she would interview Haggett as well.

50.     On Wednesday, June 26, 2019, McDonald spoke with Struckman again. Struckman said that Haggett had denied sexually harassing McDonald, and because there were no witnesses, the complaint/investigation was closed.

51.     McDonald felt extremely upset and ashamed that WSI's HR representative did not believe him about the groping incident. McDonald felt infuriated that Haggett, WSI's East Coast Sales Director, would get away with such inappropriate behavior.

52.     WSI refused to take action on McDonald's sexual harassment complaint, even though HR never made a written record of his sexual harassment complaint, never interviewed other witnesses, and never investigated to see if there was camera footage to substantiate what Haggett did.

53.     McDonald began worrying constantly about retaliation by and from Driscoll, his manager. Driscoll's behavior toward McDonald had already been volatile at times, sometimes positive and sometimes negative.

54.     After McDonald reported sexual harassment by Driscoll's close friend, Haggett, Driscoll became even more aggressive and continuously abusive toward McDonald, to the point where working for her was unbearable.

55.     McDonald asked an HR representative based in WSI's Brooklyn office, Nicole Mighty ("Mighty") to meet with him, which she did on September 16, 2019.

56.     McDonald told Mighty that he wanted to transfer to another department within WSI where he did not need to report to Driscoll. Mighty suggested that McDonald bring his request up to Driscoll directly, which made him very uncomfortable.

57.     McDonald had a mid-year review with Driscoll scheduled for October 1, 2019. The meeting was scheduled to take place in Driscoll's Brooklyn office, where McDonald also worked. A few hours prior to the review meeting, McDonald witnessed Driscoll meeting with the West Elm Vice President of Human Resources, Sonya Pankey ("Pankey").

58.     McDonald saw Pankey talking with Driscoll again ten minutes before the review meeting. McDonald went into Driscoll's office for the meeting. Driscoll explained that they were having the mid-year review in the VP of HR's office because McDonald allegedly had a hard time taking Driscoll's feedback. This was untrue; Driscoll's feedback was simply hostile, retaliatory, pretextual, and unprofessional.

59.     As McDonald entered Pankey's office for the review, Pankey tried to reassure him that everything was ok, and he could relax. However, the mid-year review was peppered with false allegations that McDonald was not meeting expectations. Pankey explained that McDonald was being placed on a performance improvement plan ("PIP") for 30 days.

60.     Pankey said that the objectives set forth in McDonald's PIP were not attainable within 30 days, and if he did not meet the performance objectives in the PIP after 30 days, he would be terminated.

61.     Pankey conveyed, and McDonald understood, that he was essentially being fired from WSI and the PIP was not intended to improve his performance.

62.     Prior to complaining of sexual harassment, McDonald received positive reviews (high meets/low exceeds) with a rating of 3.6 out of 4. He earned awards from the office of the CEO (Laura Alber) and was Employee of the Quarter for an entire country-wide department.

63.     Before he complained about sexual harassment and made allegations against Driscoll's close friend (Haggett), Driscoll said that McDonald was a "fantastic addition to the B2B team" and 2018 had been a "great year" for McDonald.

64.     McDonald met with Pankey again in October of 2019 and recorded the conversation. During the conversation, Pankey made it clear that McDonald was not permitted to transfer to another department because he was not in "good standing" with the company.

65.     Pankey gave McDonald the option of resigning instead of being terminated, which he did because he did not have a choice. During this meeting, McDonald made it clear to Pankey that he was unhappy with the way Driscoll treated him, both before and after he had complained of sexual harassment.

66.     Pankey made retaliatory comments to McDonald during this meeting. For example, she told McDonald to "move differently" in his next job, "take the high road," "be careful what you put out," be "mindful" of his audience, and "don't talk about" the kind of complaints he had made at WSI.

67.     McDonald's last day of work with WSI was November 1, 2019, although the company only paid him through October 31, 2019.

68.     Before McDonald left employment, he submitted an exit interview memo to Pankey. In the memo, McDonald expressly informed HR that he had been retaliated against for complaining of sexual harassment.

69.     In the exit interview memo, McDonald also reported inappropriate and unprofessional behavior by Driscoll toward him. WSI did not respond to any of these complaints.

70.     McDonald's personnel file reflects that he was involuntarily terminated from WSI.

71.     The purported performance issues cited by WSI were false and pretextual, because he performed his job well.

72.     Any deficiency in McDonald's performance was the result of poor management on the part of Driscoll.

73.   McDonald did not leave WSI voluntarily and would have enjoyed furthering his 10-year career with the company if he had not been forced out and constructively discharged from employment.

74.   WSI engaged in quid pro quo sexual harassment against McDonald, created a hostile work environment, and retaliated against him for opposing a practice made unlawful by the NYCHRL.

75.   WSI discriminated and retaliated against McDonald willfully, entitling him to punitive and/or liquidated damages.

## FIRST CAUSE OF ACTION

## SEXUAL ORIENTATION DISCRIMINATION
**(Title VII, 42 U.S.C. § 2000e-3)**

76.   Plaintiff repeats the allegations contained in Paragraphs 1 through 75 as if fully stated herein.

77.   As a gay man, McDonald is a member of a protected class.

78.   Title VII makes it illegal for an employer to discriminate against an employee on the basis of sexual orientation in compensation or in terms, conditions, or privileges of employment.

79.   Defendant's action described above amount to disparate treatment of McDonald and discriminatory intent on the part of WSI, in violation of Title VII.

80.   WSI treated McDonald less favorably than similarly situated employees who were not gay.

81.     WSI treated McDonald less favorably than similarly situated straight employees who complained of sexual harassment, and whose complaints of sexual harassment were taken more seriously than McDonald's.

82.     Because of his sexual orientation, WSI minimized, disregarded, and failed to take seriously his complaint of sexual harassment.

83.     WSI's discrimination caused McDonald to suffer adverse actions and alterations in the terms, conditions, and privileges of his employment, including forced resignation.

84.     WSI's conduct toward McDonald was so objectively intolerable that any reasonable person would have felt compelled to resign, especially after WSI told McDonald to resign or he would be fired. WSI constructively discharged McDonald from employment effective November 1, 2019.

85.     As a result of Defendant's sex discrimination and willful violation of Title VII, McDonald has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Kyle McDonald requests that the Court award him damages for Defendant's violation(s) of Title VII in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## SECOND CAUSE OFACTION

## <u>SEXUAL ORIENTATION DISCRIMINATION</u>
**(NYCHRL, Chapter 5, § 8-502)**

86.     Plaintiff repeats the allegations contained in Paragraphs 1 through 85 as if fully stated herein.

87.     As a gay man, McDonald is a member of a protected class.

88.     Chapter 1, § 8-107(1)(a) of the NYCHRL makes it illegal for an employer to discriminate against an employee on the basis of sexual orientation in compensation or in terms, conditions, or privileges of employment.

89.     Defendant's action described above amount to disparate treatment of McDonald and discriminatory intent on the part of WSI, in violation of the NYCHRL.

90.     WSI treated McDonald less favorably than similarly situated employees who were not gay.

91.     WSI treated McDonald less favorably than similarly situated straight employees who complained of sexual harassment, and whose complaints of sexual harassment were taken more seriously than McDonald's.

92.     Because of his sexual orientation, WSI minimized, disregarded, and failed to take seriously his complaint of sexual harassment.

93.     WSI's discrimination caused McDonald to suffer adverse actions and alterations in the terms, conditions, and privileges of his employment, including forced resignation.

94.     WSI's conduct toward McDonald was so objectively intolerable that any reasonable person would have felt compelled to resign, especially after WSI told

14

McDonald to resign or he would be fired. WSI constructively discharged McDonald from employment effective November 1, 2019.

95.     As a result of Defendant's sex discrimination and willful violation of the NYCHRL, McDonald has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Kyle McDonald requests that the Court award him damages for Defendant's violation(s) of the NYCHRL in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## THIRD CAUSE OF ACTION

## <u>SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT</u>
**(Title VII, 42 U.S.C. § 2000e-3)**

96.     Plaintiff repeats the allegations contained in Paragraphs 1 through 95 as if fully stated herein.

97.     Title VII prohibits the creation of a hostile work environment based on sexual harassment.

98.     The sexual harassment McDonald experienced at WSI was objectively severe or pervasive, such that a reasonable person would find the work environment hostile or abusive.

99.    The sexual harassment described above created an environment that Plaintiff subjectively perceived as hostile or abusive.

100.    The hostile and abusive work environment described above was created because of Plaintiff's sex and sexual orientation.

101.    A single incident or occurrence of sexual harassment can create a hostile work environment if sufficiently severe and pervasive, such as an instance of groping.

102.    WSI knew or should have known that the actions described above created a hostile work environment for McDonald and others, but WSI failed to take prompt and reasonable remedial action to remedy the hostile environment in violation of Title VII.

103.    WSI's sexual harassment of McDonald based on a hostile work environment resulted in his constructive discharge from employment on about January 15, 2020.

104.    As a result of WSI's sexual harassment based on a hostile work environment, which constituted a willful violation of Title VII, McDonald has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Kyle McDonald requests that the Court award him damages for Defendant's violation(s) of Title VII in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees,

costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## FOURTH CAUSE OF ACTION

### SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT
### (NYCHRL, Chapter 5, § 8-502)

105.   Plaintiff repeats the allegations contained in Paragraphs 1 through 104 as if fully stated herein.

106.   The NYCHRL prohibits the creation of a hostile work environment based on sexual harassment.

107.   The sexual harassment McDonald experienced at WSI was objectively severe or pervasive, such that a reasonable person would find the work environment hostile or abusive.

108.   The sexual harassment described above created an environment that Plaintiff subjectively perceived as hostile or abusive.

109.   The hostile and abusive work environment described above was created because of Plaintiff's sex and sexual orientation.

110.   A single incident or occurrence of sexual harassment can create a hostile work environment if sufficiently severe and pervasive, such as an instance of groping.

111.   WSI knew or should have known that the actions described above created a hostile work environment for McDonald and others, but WSI failed to take prompt and reasonable remedial action to remedy the hostile environment in violation of the NYCHRL.

112.   WSI's sexual harassment of McDonald based on a hostile work environment resulted in his constructive discharge from employment on about January 15, 2020.

113.   As a result of WSI's sexual harassment based on a hostile work environment, which constituted a willful violation of the NYCHRL, McDonald has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Kyle McDonald requests that the Court award him damages for Defendant's violation(s) of the NYCHRL in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## FIFTH CAUSE OF ACTION

### QUID PRO QUO SEXUAL HARASSMENT
(Title VII, 42 U.S.C. § 2000e-3)

114.   Plaintiff repeats the allegations contained in Paragraphs 1 through 113 as if fully stated herein.

115.   Title VII prohibits quid pro quo sexual harassment.

116.   WSI engaged in quid pro quo sexual harassment of McDonald because his supervisor (Driscoll) retaliated against him for reporting Haggett's groping and sexual harassment instead of going along with the unwelcome physical contact.

117.   Based on the close relationship and friendship between Haggett and Driscoll, both WSI employees acted as McDonald's de facto supervisor with the authority to affect the terms and conditions of McDonald's employment.

118.   Because he had such a close personal relationship with Driscoll, who directly managed McDonald, Haggett had authority to affect the benefits and privileges of McDonald's employment.

119.   McDonald's failure to acquiesce to Haggett's sexual advances led to his false and pretextual PIP and ultimate termination from employment.

120.   The adverse actions that McDonald faced leading up to his separation from employment were the direct result of quid pro quo sexual harassment, because he complained of sexual harassment on multiple occasions to WSI instead of going along with the harassment.

121.   As a result of WSI's quid pro quo sexual harassment of McDonald, which constituted a willful violation of Title VII, McDonald has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Kyle McDonald requests that the Court award him damages for Defendant's violation(s) of Title VII in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to h by law.

## SIXTH CAUSE OF ACTION

## QUID PRO QUO SEXUAL HARASSMENT
### (NYCHRL, Chapter 5, § 8-502)

122.    Plaintiff repeats the allegations contained in Paragraphs 1 through 121 as if fully stated herein.

123.    The NYCHRL prohibits quid pro quo sexual harassment.

124.    WSI engaged in quid pro quo sexual harassment of McDonald because his supervisor (Driscoll) retaliated against him for reporting Haggett's groping and sexual harassment instead of going along with the unwelcome physical contact.

125.    Based on the close relationship and friendship between Haggett and Driscoll, both WSI employees acted as McDonald's de facto supervisor with the authority to affect the terms and conditions of McDonald's employment.

126.    Because he had such a close personal relationship with Driscoll, who directly managed McDonald, Haggett had authority to affect the benefits and privileges of McDonald's employment.

127.    McDonald's failure to acquiesce to Haggett's sexual advances led to his false and pretextual PIP and ultimate termination from employment.

128.    The adverse actions that McDonald faced leading up to his separation from employment were the direct result of quid pro quo sexual harassment, because he complained of sexual harassment on multiple occasions to WSI instead of going along with the harassment.

129.    As a result of WSI's quid pro quo sexual harassment of McDonald, which constituted a willful violation of the NYCHRL, McDonald has suffered and is entitled

to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Kyle McDonald requests that the Court award him damages for Defendant's violation(s) of the NYCHRL in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to h by law.

## SEVENTH CAUSE OF ACTION

### RETALIATION FOR OPPOSING A PRACTICE
**(Title VII, 42 U.S.C. § 2000e-3)**

130. Plaintiff repeats the allegations contained in Paragraphs 1 through 129 as if fully stated herein.

131.   Under Title VII, it shall be an unlawful discriminatory practice to retaliate against any person who has opposed a practice forbidden by Title VII.

132.   McDonald engaged in protected conduct under Title VII by opposing Haggett, Driscoll, and/or WSI's sexual harassment of him in 2019.

133.   Because he opposed a practice or practices made unlawful by Title VII, McDonald suffered adverse action with respect to his employment and material changes in the terms and conditions of his employment.

134.   The retaliation that McDonald faced for opposing a practice made unlawful by Title VII was reasonably likely to deter another WSI employee from engaging in protected activity, in violation of law.

135.   WSI's conduct in retaliating against McDonald was willful and intentional, and perpetrated by WSI's own human resources representatives.

136.   As a result of WSI's willful retaliation in violation of Title VII, McDonald has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Kyle McDonald requests that the Court award him damages for Defendant's violation(s) of Title VII in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## EIGHTH CAUSE OF ACTION

## <u>RETALIATION FOR OPPOSING A PRACTICE</u>
### (NYCHRL, Chapter 5, § 8-502)

137.   Plaintiff repeats the allegations contained in Paragraphs 1 through 136 as if fully stated herein.

138.   Under Chapter 1, § 8-107(7) of the NYCHRL, it shall be an unlawful discriminatory practice to retaliate against any person who has opposed a practice forbidden by Chapter 1.

139.   McDonald engaged in protected conduct under the NYCHRL by opposing Haggett, Driscoll, and/or WSI's sexual harassment of him in 2019.

140.   Because he opposed a practice or practices made unlawful by Chapter 1 of the NYCHRL, McDonald suffered adverse action with respect to his employment and material changes in the terms and conditions of his employment.

141.   The retaliation that McDonald faced for opposing a practice made unlawful by Chapter 1 of the NYCHRL was reasonably likely to deter another WSI employee from engaging in protected activity, in violation of law.

142.   WSI's conduct in retaliating against McDonald was willful and intentional, and perpetrated by WSI's own human resources representatives.

143.   As a result of WSI's willful retaliation in violation of the NYCHRL, McDonald has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Kyle McDonald requests that the Court award him damages for Defendant's violation(s) of the NYCHRL in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## **JURY TRIAL DEMAND**

Plaintiff Kyle McDonald hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of New York.

Dated: July 15, 2022                    */s/ Laura H. White*

                                        _____
                                        Laura H. White, Bar No. 4025
                                        *Attorney for Plaintiff*
                                        WHITE & QUINLAN, LLC
                                        62 Portland Rd., Suite 21
                                        Kennebunk, ME 04043
                                        (207) 502-7484
                                        *lwhite@whiteandquinlan.com*