UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KYLE MCDONALD,

                           Plaintiff,

           v.

WILLIAMS-SONOMA, INC.,

                           Defendant.

**MEMORANDUM & ORDER**
22-CV-04164 (HG)

**HECTOR GONZALEZ**, United States District Judge:

        Plaintiff Kyle McDonald brings this action to assert retaliation claims under Title VII of

the Civil Rights Act of 1964 ("Title VII") and Chapter Five of the New York City Human Rights

Law ("NYCHRL") against Defendant Williams-Sonoma, Inc. ("WSI").  Plaintiff alleges that

after he reported a WSI employee for sexually harassing him in 2019, WSI retaliated against

Plaintiff by giving him a negative mid-year review and forcing him to resign from the company.

ECF No. 38-38 (Defendant's Motion for Summary Judgment); ECF No. 41-1 (Plaintiff's

Opposition to Defendant's Motion).  Presently before the Court is Defendant's motion seeking

summary judgment on Plaintiff's claims.  ECF No. 38-38.  For the reasons set forth below,

Defendant's motion is GRANTED.

**BACKGROUND**[1]

        Plaintiff began working at WSI in October of 2009 and continued working there through

either October 31, 2019, or November 1, 2019.[2]  ECF No. 41-1 ¶¶ 1, 6 (Plaintiff's Opposition to

---

[1]        Unless otherwise specified, the facts cited herein are undisputed.

[2]        The parties dispute the exact date of Plaintiff's separation from WSI.

Defendant's Rule 56.1 Statement).  In October 2018, Plaintiff was promoted to the position of Program Manager in WSI's "Business-to-Business" division.  *Id.* ¶¶ 3, 7.  In that role, Plaintiff was supervised by Josie Driscoll, with whom he had not previously worked.  *Id.* ¶ 7.  Until then, Plaintiff had had a positive experience at WSI.  *Id.* ¶¶ 9, 13.  That changed after his transfer.  *Id.* Although Driscoll initially gave Plaintiff positive feedback, soon thereafter he began to feel that Driscoll had a negative view of his performance.  *Id.* ¶ 15; ECF No. 38-37 ¶ 1 (Defendant's Response to Plaintiff's Alternative Statement of Material Facts).  Plaintiff characterized Driscoll as a "bad manager," "tough and abrasive and rude," and "inaccessible."  *Id.* ¶ 11.

During his time as a Program Manager, Plaintiff met with Nicole Mighty from WSI's Human Resources ("HR") department on three separate occasions—March 26, 2019, mid-June of 2019, and September 26, 2019—to seek guidance on managing his relationship with Driscoll. *Id.* ¶¶ 18–19, 25–26, 42–43.  During his June and September meetings, Plaintiff expressed an interest in transferring to another position at WSI where he would not have to work with Driscoll.  *Id.* ¶¶ 25–26, 42–43.  In June, Mighty told him to discuss his interest in transferring directly with Driscoll, and in September, Mighty told him she would speak with other HR employees to determine whether transferring might be an option for Plaintiff.  *Id.*

On May 21, 2019, Plaintiff attended a WSI event, at which he alleges that Ryan Haggett, a co-worker, touched his buttocks while they were posing for a group photo with other WSI employees.  *Id.* ¶ 22.  Plaintiff further alleges that immediately thereafter, Haggett winked at him while asking him a question.  *Id.* ¶ 23.  Driscoll and Haggett were close friends outside of the office and had been since before Haggett began working at WSI.  ECF No. 38-37 ¶¶ 5, 10, 40.

On June 18, 2019, after his June meeting with Mighty, Plaintiff emailed Driscoll to set up a meeting to discuss, *inter alia*, his role in the Business-to-Business division and exploring other

opportunities at WSI.  *Id.* ¶ 27.  On that same day he texted a colleague that he had "had enough of [Driscoll]" and that he "[could not] continue working for her."  *Id.* ¶ 38.  Plaintiff met with Driscoll on June 20, 2019.  *Id.* ¶ 28.  When Plaintiff asked to transfer to a different position at WSI, Driscoll said that rather than transfer him, they should "double down" and "work this out."  *Id.*  At the end of the meeting, Plaintiff disclosed the incident with Haggett to Driscoll.  *Id.* ¶ 29.  Driscoll listened, asked questions, and told Plaintiff she was required to notify HR.  *Id.* ¶¶ 29–30.  Later that same day, Driscoll informed Christy Struckman in HR of Plaintiff's allegation.  *Id.*

The following day, Struckman spoke with Plaintiff for roughly 45 minutes to understand his allegations.  *Id.* ¶ 32.  Struckman next interviewed Haggett, who "vehemently denied" intentionally touching Plaintiff.  *Id.*  On June 26, 2019, Struckman contacted Plaintiff and told him that she had not been able to corroborate his allegation of inappropriate touching because Haggett denied that the accusation occurred and there were no other witnesses.  *Id.* ¶ 34.

According to Driscoll, Plaintiff's job performance worsened dramatically in late June of 2019.  *Id.* ¶ 37.  By contrast, Plaintiff felt that Driscoll's behavior towards him changed and became "abusive" after he reported Haggett to HR.  ECF No. 38-37 ¶ 14.  Beginning on August 12, 2019, Driscoll exchanged a series of emails with Sonya Pankey, the Vice President of HR at WSI, in which she explained the ways in which Plaintiff was not meeting his performance expectations.  ECF No. 41-1 ¶¶ 39–41; ECF No. 38-18; ECF No. 38-19; ECF No. 38-20; ECF No. 38-21; ECF No. 38-22; ECF No. 38-23.

Pankey and Driscoll conducted Plaintiff's mid-year performance review on October 1, 2019.  *Id.* ¶¶ 44, 47.  Plaintiff was nervous going into his review because he did not believe he was meeting Driscoll's expectations.  *Id.* ¶ 47; ECF No. 38-4 at 35.[3]  Driscoll rated Plaintiff as

---

[3]     The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

"Needs Improvement" in her review and explained her concerns about Plaintiff's performance. ECF No. 41-1 ¶¶ 48–49.  Plaintiff acknowledged that some of the feedback Driscoll gave him matched "ongoing conversations" he and Driscoll had been having about his performance.  ECF No. 38-4 at 42–43.  In light of his "Needs Improvement" rating, Pankey raised the prospect of placing Plaintiff on a 30-day Performance Improvement Plan ("PIP").  ECF No. 41-1 ¶ 52.

Pankey met with Plaintiff the next morning and told him that he could not transfer to another role at WSI because of his "Needs Improvement" rating.  *Id.* ¶¶ 55–56.  Without Pankey's knowledge, Plaintiff audio recorded their meeting.  *Id.*  During the meeting, Plaintiff and Pankey agreed that Plaintiff would remain employed at WSI for 30 more days on a flexible schedule that would allow him to look for another job.[4]  *Id.* ¶ 57.  Pankey told Plaintiff that, for his professional development, he should "move differently" in his next job, "[b]e careful of [his] audience" and what he "put[s] out," and that he should make sure to "know [his] audience."  *Id.* ¶¶ 58–59.

## PROCEDURAL HISTORY

Plaintiff filed suit against WSI on July 15, 2022, asserting claims for sexual orientation discrimination, sexual harassment/hostile work environment, quid pro quo sexual harassment, and retaliation under both Title VII and the NYCHRL.  ECF No. 1 (Complaint).  On January 10, 2023, Plaintiff informed the Court that he did not intend to oppose Defendant's motion that sought to dismiss his sexual orientation discrimination, sexual harassment/hostile work environment, and quid pro quo sexual harassment claims, leaving only the retaliation claims.

---

[4]      Defendant argues that Plaintiff could have chosen to accept the 30-day PIP and remain employed at WSI for at least that period.  Plaintiff contends that because it was made clear to him that the goals in the PIP were not attainable in 30 days, remaining employed at WSI was not an option available to him.  ECF No. 41-1 ¶ 57.

ECF No. 18 (Plaintiff's Letter re Motion to Dismiss).  On March 3, 2023, Plaintiff filed an

Amended Complaint asserting only his Title VII and NYCHRL retaliation claims.  ECF No. 19

(Amended Complaint).  On January 19, 2024, Defendant filed a motion seeking summary

judgment on the remaining claims.  ECF No. 38.  Plaintiff filed his opposition on March 11,

2024, ECF No. 41, and Defendant filed its reply on March 25, 2024, ECF No. 42 (Defendant's

Reply in Support of Motion for Summary Judgment).

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  In other words, a court should grant summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits . . . show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[5]  The moving party

has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a

genuine issue of material fact, the opposing party must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654

F.3d 347, 358 (2d Cir. 2011).

In deciding a summary judgment motion, any ambiguities and justifiable inferences

drawn from the facts must be viewed in the light most favorable to the nonmoving party.

*LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  Although "courts must

---

[5]     Unless noted, case law quotations in this Order accept all alterations and omit all internal
quotation marks, citations, and footnotes.

refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," a plaintiff must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party." *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 456 (2d Cir. 2022) (affirming summary judgment dismissing complaint). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247. Indeed, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249.

## DISCUSSION

### I.      Plaintiff's Submissions in Opposition to Defendant's Motion

As an initial matter, before moving on to the substance of Defendant's motion, the Court must address Defendant's arguments about the sufficiency of Plaintiff's submissions in opposition to Defendant's motion.  Defendant argues that Plaintiff's Rule 56.1 Opposing Statement is "replete with failures to cite to the record, legal argument, attorney editorialization, 'qualified' admissions, and even outright denials to factual averments supported by his own testimony."  ECF No. 38-38 at 9.  Defendant asks the Court to disregard Plaintiff's submissions and deem Defendant's Rule 56.1 Statement admitted in its entirety.  *Id.* at 9–10.

"When facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and are denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence," the Court is within its discretion to deem such facts true.  *Wilkinson v. Nord Anglia Educ. Ltd.*, No. 17-cv-7421, 2019 WL 3430662, at *1 (S.D.N.Y. July 30, 2019); *see also Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219

(2d Cir. 2004) (holding that a genuine issue of material fact is not "created merely by the presentation of assertions that are conclusory").  Plaintiff cannot raise a factual dispute about statements in Defendant's 56.1 statement with "legal arguments, statements contradicted by the evidentiary record . . . or additional context which does not contradict Defendant['s] statement of fact." *Cotnoir-Debenedetto v. Uniondale Union Free Sch. Dist.*, No. 20-cv-5096, 2023 WL 4274701, at *1 n.1 (E.D.N.Y. June 29, 2023).  Indeed, although the Court must draw "all reasonable inferences" in favor of the party opposing a motion for summary judgment, "conclusory statements, conjecture, or speculation . . . will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Defendant is correct that many of Plaintiff's purported denials or partial denials do not actually controvert the substance of the corresponding paragraphs in Defendant's 56.1 statement but instead purport to provide additional context.  *See, e.g.*, ECF No. 41-1 ¶¶ 15–16, 39, 55, 58, 63.  For example, Plaintiff offers a partial denial to Paragraph 11 of Defendant's Rule 56.1 Statement in which Defendant cites Plaintiff's own testimony about his belief that Driscoll was a bad manager, admitting that the testimony is cited accurately but denying "that this is a complete list of Plaintiff's complaints about Driscoll" (an assertion Defendant does not make).  *Id.* ¶ 11. "[M]erely providing additional context does not properly controvert" a fact asserted in a Rule 56.1 statement.  *Tripathy v. McCloskey*, No. 21-cv-6584, 2024 WL 2135623 at *1 (S.D.N.Y. May 13, 2024).  In other instances, Plaintiff asserts that a fact is disputed without citing to admissible evidence or by making assertions that are argumentative and reflect an attempt to assert legal arguments better reserved for Plaintiff's memorandum of law.  *See, e.g.*, ECF No. 41-1 ¶¶ 32, 45, 60.  For example, Plaintiff offers a partial denial to Paragraph 41 of Defendant's Rule 56.1 statement in which Defendant quotes accurately from emails sent by Driscoll,

admitting that the quotations are accurate but denying the statement of fact "to the extent this Statement suggests Driscoll's criticisms were legitimate, instead of pretextual and retaliatory." *Id.* ¶ 41.  "Such denials are wholly inappropriate" in the context of a response to a Rule 56.1 statement, which "should not contain legal conclusions or unsubstantiated opinions, and must instead, where a dispute exists, specifically controvert the facts asserted by the movant via material facts supported by admissible evidence."  *Tripathy*, 2024 WL 2135623 at *2.

"Courts can and do ignore all portions of a Rule 56.1 Statement that contain such improper legal argument and unsupported assertions."  *Bellis v. New York City Dep't of Educ.*, No. 21-cv-3282, 2024 WL 1177232, at *2 (S.D.N.Y. Mar. 19, 2024).  Although the Court will not go as far as to deem all the facts set forth in Defendant's Rule 56.1 Statement as admitted, the Court has disregarded all instances in which Plaintiff opposed a statement of fact without citation to supporting evidence in the record or based on improper legal arguments and conclusory assertions.  *See, e.g., id.* at *3 (declining to disregard as a whole plaintiff's response to defendant's 56.1 statement but deeming admitted statements for which plaintiff's opposition was not supported by citations to competent evidence and disregarding improper objections put forward by plaintiff).  In instances where the Court has disregarded Plaintiff's denial of a fact as non-compliant, the Court has reviewed the underlying record as a whole and only considered Defendant's relevant statement undisputed to the extent it is supported by the cited evidence.  *See, e.g., Cotnoir-Debenedetto*, 2023 WL 4274701, at *1, *4–5; *Belis*, 2024 WL 1177232, at *3.

Defendant also asks the Court to ignore Plaintiff's Statement of Additional Material Facts ("SAMF"), which Plaintiff filed pursuant to Rule 56.1(b), *see* ECF No. 41-2, because:  (1) Plaintiff uses the SAMF to "introduce narratives" that are unsupported by the record and for

which Plaintiff does not cite to relevant admissible evidence,[6] and (2) it relies on citations to a statement Plaintiff submitted to the New York State Division of Human Rights before this case began (the "NYSDHR Statement") that Defendant alleges is unsworn.  ECF No. 38-38 at 13. Defendant is correct that the SAMF submitted by Plaintiff reflects Plaintiff's continued failure to understand the purpose and requirements of a Rule 56.1 statement.[7]  As already discussed, the Court has reviewed the record and to the extent that purported statements of "fact" that Plaintiff attempts to introduce in his SAMF are unsupported by the record or contain improper legal argument, the Court has disregarded those statements.

However, the Court does not agree with Defendant that allowing Plaintiff to cite to his NYSDHR Statement is "akin to relying on the allegations in a complaint."  ECF No. 38-38 at 11, 13.  Rather, because the Court credits Plaintiff's counsel's statement in her declaration that Plaintiff signed the NYSDHR Statement "under penalty of perjury during the COVID-19 pandemic, via docusign," which is consistent with the language on the signature page of the NYSDHR complaint form, the Court finds that the NYSDHR Statement is more akin to an affidavit.  ECF No. 41-3 ¶ 3–5; ECF No. 41-4 at 6.  Accordingly, as with any affidavit, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant [] is competent to testify on the matters stated."  *DiStiso v. Cook*, 691 F.3d 226,

---

[6]     Most notably, Plaintiff makes conflicting assertions about when Driscoll drafted Plaintiff's mid-year review, neither of which is supported by any evidence in the record.  ECF No. 38-37 ¶¶ 17–18.

[7]     As just one example, Plaintiff repeatedly cites to "McDonald Deposition Exhibit[s]" in his SAMF.  *See, e.g.*, ECF No. 38-37 ¶¶ 1, 6–7, 17, 20, 26.  However, none of the exhibits provided to the Court are labeled as deposition exhibits, and Plaintiff's counsel's declaration submitted in opposition to Defendant's motion does not explain which of the submitted exhibits correspond to the referenced deposition exhibits.  ECF No. 41-3.  Where possible, the Court has endeavored to make this determination on its own.

230 (2d Cir. 2012).  "A court may strike portions of an affidavit that are not based upon an affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements," *Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016), and the Court has done so here as necessary in reviewing the NYSDHR Statement and the record as a whole, and determining the extent to which they support the assertions in Plaintiff's SAMF.

Finally, Plaintiff's SAMF cites extensively to a five-page set of handwritten notes that Plaintiff calls "HR Notes," the first page of which is dated June 20, 2019.  ECF No. 38-31; ECF No. 38-2 ¶¶ 35–37.  As WSI correctly points out, Plaintiff offers no testimony or information about this document, and thus the Court is left wondering who prepared the notes, whether all the notes are from June 20, 2019, who provided the information contained in the notes, or why the notes were prepared.  Although Plaintiff asserts that the notes are "HR Notes," he offers no "evidence sufficient to support a finding" that the notes actually are what he says they are.  Fed. R. Evid. 901(a).  There is, for example, no witness testimony about the notes and no custodian to whom the notes are attributed.  While Plaintiff does not have to "prove beyond any doubt that the evidence is what it purports to be," he must show that there is a "reasonable likelihood." *Kaur v. New York City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 323 (S.D.N.Y. 2010).  Yet in response to Defendant's challenge, Plaintiff has made no effort to show that there is a reasonable likelihood that the notes were in fact prepared by an individual in WSI's HR department on June 20, 2019, or any date thereafter, as part of an effort to solicit negative feedback about Plaintiff after he complained about Haggett.  "The principles governing admissibility of evidence do not change on a motion for summary judgment." *Ravenell v. Avis Budget Grp.*, No. 08-cv-2113, 2014 WL 1330914, at *2 (E.D.N.Y. Mar. 31, 2014).  Defendant has raised legitimate challenges to the admissibility of the "HR Notes" and Plaintiff has provided no basis for the Court to

determine that this document constitutes admissible evidence.  Accordingly, the Court has not relied on this document or the paragraphs that cite to it in Plaintiff's SAMF in reaching the conclusions below.

## II.    Plaintiff's Title VII Claim

At the summary judgment stage, claims of retaliation brought under Title VII are analyzed under the burden-shifting framework set by the Supreme Court in *McDonnell Douglas*. *See Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 659, 661 (E.D.N.Y. 2015) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (2010)).  Under the three-step *McDonnell Douglas* framework, "[f]irst, the plaintiff must establish a prima facie case of retaliation by showing:  (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  A plaintiff's "burden in this regard is *de minimis*."  *Id.*  If plaintiff meets this initial burden, "a presumption of retaliation arises," and the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action."  *Id.*  If the defendant does so, then "the burden shifts back to the plaintiff" who "must show that the reason offered by the employer is merely pretext, and that the employer's desire to retaliate was [a] but-for cause of the challenged employment action."  *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14 (2d Cir. Jan. 30, 2018); *see also Banks v. Gen. Motors, LLC*, 81 F. 4th 242, 275 (2d Cir. 2023); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "require[] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

A.       *Prima Facie Case*

Plaintiff has not established his *prima facie* case.  In its summary judgment motion, WSI "concedes for purposes of this Motion only that Plaintiff can establish the first three elements of his *prima facie* burden, including that each action constitutes an 'adverse action.'"  ECF No. 38-38 at 15.  Accordingly, the only issue for the Court to determine with respect to Plaintiff's *prima facie* case is whether he can establish a causal connection between his sexual harassment complaint about Haggett, and any adverse employment action.  *Hicks*, 593 F.3d at 164.

Plaintiff argues that he can establish a causal connection based on the temporal proximity of the adverse actions to his protected activity and alleged "retaliatory comments" made by Pankey during their final meeting.  Defendant argues that Plaintiff cannot establish such a causal connection because:  (1) more than three months passed between Plaintiff's complaint about Haggett and Plaintiff's mid-year review, and (2) Plaintiff was not performing in accordance with expectations before he complained about Haggett, making any adverse actions that occurred[8] the natural consequences of his performance.  ECF No. 38-38 at 15–19.

"A plaintiff can establish causation (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon-Mallett v. Mount Sinai Hosps. Grp.*, No. 22-cv-1159, 2024 WL 1513910, at *18 (S.D.N.Y. Apr. 8, 2024).  The Second Circuit "ha[s] not drawn a bright line to define the outer limits beyond which a temporal

---

[8]       For the purpose of this analysis, Defendant appears to view the following, which the Court will refer to as the "Challenged Actions" as potentially adverse actions:  (1) Plaintiff's negative mid-year review; (2) the threat of a PIP; and (3) the termination of his employment. ECF No. 38-38 at 15.  Plaintiff does not state in his opposition what he considers to be the relevant adverse employment actions for the purpose of the Court's analysis, and he does not challenge Defendant's proffered actions, referencing only his "termination" in the relevant section of his opposition.  ECF No. 41 at 6–7.

relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," to allow courts to "exercise . . . judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013).

Here, citing to no caselaw, Plaintiff argues that he suffered adverse employment action "***immediately after***" [emphasis in original] his protected activity because he reported the Haggett incident "[j]ust three months before his termination." ECF No. 41 at 7.[9] As Defendant notes, courts in this circuit routinely find that gaps of three months are too long to establish causation absent direct evidence of retaliation or intervening relevant actions. *See, e.g.*, *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990); *Smith v. New York and Presbyterian Hosp.*, 440 F. Supp. 3d 303, 343 (S.D.N.Y. 2020) (collecting cases); *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 34 (E.D.N.Y. 2015) (collecting cases). When courts have found that gaps of three-months or longer support causation, "there has generally been other evidence to suggest retaliation." *Fraser v. MTA L.I.R.R.*, 307 F. Supp. 3d 105, 116 (E.D.N.Y. Mar. 31, 2018).

---

[9]     Without citing to any evidence in the record, Plaintiff also asserts for the first time in his opposition that "[j]ust two weeks prior to his 'Needs Improvement' evaluation, [he] reported to Human Resources that his manager was retaliating against him for his report of sexual harassment" implying a closer timeframe between a protected activity and the first Challenged Action. There is no evidence in the record to suggest that Plaintiff complained about "retaliation" by Driscoll or mentioned his complaint about Haggett to Mighty during their September 16, 2019, meeting. The record, including Plaintiff's own sworn statements, reflects only that Plaintiff told Mighty he did not want to work under Driscoll anymore and asked to transfer departments—it does not reflect any mention of Haggett during that meeting. *See, e.g.*, ECF No. 41-4 at 10; ECF No. 38-4 at 33–34; ECF No. 38-24. The Court cannot credit an unsupported assertion that contradicts the full record in front of it. *See Vuona v. Merrill Lynch & Co. Inc.*, 919 F. Supp. 2d 359, 387 (S.D.N.Y. 2013) (representations by counsel are not admissible at summary judgment stage). And, Plaintiff has not argued in his brief that the protected activity for which he was terminated was complaining about Driscoll as a manager (nor can he since his Amended Complaint explicitly pleads that the protected conduct in which he engaged was opposing sexual harassment, ECF No. 19 ¶ 78). *See generally* ECF No. 41.

Accordingly, Plaintiff's efforts to indirectly establish causation cannot succeed based on temporal proximity absent additional evidence that supports an inference of retaliatory causation.

Plaintiff argues that he does not have to rely on temporal proximity alone because he has put forward evidence that Pankey "made retaliatory comments during the final meeting with [Plaintiff] that a reasonable juror could infer [were] made because of [Plaintiff's] report of sexual harassment." ECF No. 41 at 7.  Because Plaintiff cites to the wrong legal standard in his brief, using the standard for retaliation actions brought under the Federal Railway Safety Act ("FRSA") rather than pursuant to Title VII,[10] it is not clear to the Court whether Plaintiff considers Pankey's comments to be direct evidence of retaliatory animus or additional circumstantial evidence sufficient to support causation.  The Court will address both arguments.

Because Plaintiff recorded his conversation with Pankey, the Court need not rely on the parties' subjective memories and can instead view the comments within their relevant context. The record reflects that, in discussing Plaintiff's departure from WSI, Pankey said that she wanted to schedule an exit interview because she "want[ed] to hear [him]" on his feedback about Driscoll but explained that "at the end of the day, it is the manager . . . who determines whether or not you're meeting expectations.  And we talked about that."  ECF No. 38-35 at 8.  Plaintiff responded that he wanted "to be fair," that he knew "[t]hings don't always work out" but that he wanted to make things "better for the next person, and better for the current team."  *Id.*  The following conversation ensued, which the Court quotes from the record without modification:

---

[10]     The standard to establish a *prima facie* retaliation case under the FRSA differs from the standard used to establish a *prima facie* retaliation case under Title VII.  A Title VII plaintiff must establish a "causal connection between the protected activity and the adverse employment action," *Hicks*, 593 F.3d at 164, but a FRSA Plaintiff must only establish that "the protected activity was a contributing factor in the unfavorable action," *Gonzalez v. Metro-North Commuter R.R.*, No. 18-cv-10270, 2020 WL 230115, at *5 (S.D.N.Y. Jan. 15, 2020).

> Sonya Pankey: Kyle, the other advice that I'm going to give you, and this is just in terms of your own development. Wherever you go next, just so that—move differently. Be careful of your audience. Be careful about what you put out. What you put out, do it with intent and meaning or don't do it, right?
>
> Kyle McDonald: Yeah.
>
> Sonya Pankey: Whatever you decide to do on your own, you do it. But I wouldn't talk about it. And then again, always know your audience.
>
> Kyle McDonald: Yeah. That's fair. I get that. I mean, I—let's call it. I was unhappy, unhappy in this position.
>
> Sonya Pankey: Yeah. Yes. Yes.
>
> Kyle McDonald: And I communicated it in other ways that—
>
> Sonya Pankey: But you communicated it in ways—
>
> Kyle McDonald: Yes.
>
> Sonya Pankey: And you'll learn. You will learn. You will absolutely learn and grow. And you'll look back at a time. And I mean, I could look back at my career and like thank god the person who mentored me cared enough about me personally to say I know you're better than that.
>
> Kyle McDonald: Yeah.

*Id.* at 8–9. Later in the conversation, Plaintiff thanked Pankey for being "extremely supportive," and said that he thought "overall, . . . it just wasn't a good fit." *Id.* at 9–10.

In his NYSDHR Statement, Plaintiff stated that he interpreted Pankey's comments as "retaliatory." ECF No. 41-4 at 10. During his deposition Plaintiff explained that he viewed Pankey's comments as "[f]orward looking but off color given the way I was taking her comments was don't complain to HR, full stop" about "[d]ifficulties with [Driscoll], sexual harassment." ECF No. 38-4 at 45. He said that even though Pankey "wasn't really involved with the whole [Haggett] situation," she "would have had some knowledge that I made a

15

complaint" and about "the numerous times I went to HR asking for guidance and then ultimately asking for transfers, other options." *Id.* at 45–46.  When asked if there was anything in the conversation that he felt tied Pankey's comments explicitly to the Haggett complaint, Plaintiff stated that he found Pankey's comments "to be very out of left field when [she] was not involved with my management of my relationship with [Driscoll]" so he ultimately took her comments as both "referring to [his] complaint against [] Haggett," and "all of the complaints or guidance sessions I had with HR." *Id.* at 47.  In other words, even Plaintiff himself does not appear to be convinced that Pankey's comments were specifically related to his protected activity of reporting Haggett as opposed to his other conversations with HR about Driscoll's management style.

To the extent that Plaintiff is arguing that Pankey's comments constitute direct evidence of retaliatory animus, that argument fails.  Direct evidence is "evidence tending to show, without resort to inference, the existence of a fact in question," such as "an admission by the decisionmaker that he or she made a decision by relying on an improper consideration." *Smith*, 440 F. Supp. 3d at 341–42.  Pankey does not directly state that the Challenged Actions were brought about by his complaint about Haggett, and so, to find that Pankey's comments evince a retaliatory motive behind WSI's decisions, any finder of fact would have to resort to inference.  Accordingly, Pankey's comments cannot constitute direct evidence of retaliatory animus.

If Plaintiff is instead arguing that Pankey's comments constitute circumstantial evidence that, when combined with temporal proximity, are sufficient to establish causation, this argument also fails because, viewed in their full context, Pankey's comments do not allow an inference that Plaintiff was terminated as retaliation.  A finder of fact could not reasonably infer from hearing Pankey's comments that she was specifically referencing Plaintiff's complaint about Haggett and implying that Plaintiff was fired because of his report.  *See Gene Codes Forensics,*

*Inc. v. City of New York*, 812 F. Supp. 2d 295, 308 (S.D.N.Y. 2011) (plaintiff's position was "too speculative" and summary judgment was appropriate when the court's review of the transcript of a taped conversation plaintiff offered to establish an issue of material fact demonstrated that plaintiff had attributed "the most nefarious of interpretations" to the relevant statements and had no supporting evidence beyond his own interpretation); *cf. Clark v. City of New York*, No. 13-cv-210, 2016 WL 11469535, at *4 (E.D.N.Y. July 22, 2016) ("tortured construction" of statements in a transcript could not support party's position on summary judgment)

Indeed, beyond his own equivocal and conclusory testimony, Plaintiff points to no other admissible evidence in the record that supports his preferred nefarious interpretation of Pankey's comments.[11]  *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (to defeat summary judgment, a nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" but rather "must offer some hard evidence showing that its version of the events is not wholly fanciful"); *Hong Liu v. Queens Libr. Found., Inc.*, No. 14-cv-7311, 2017 WL 4217121, at *9 (E.D.N.Y. Sept. 20, 2017) (plaintiff's own "subjective interpretation" of a comment was not sufficient evidence at summary judgment stage); *Randall v. Potter*, No. 01-cv-2097, 2004 WL 439491, at *8 (S.D.N.Y. Mar. 9, 2004) (conclusory allegations absent supporting evidence in the record were not sufficient to suggest a causal relationship between plaintiff's complaints and her negative evaluation or termination); *Welch v. First Albany Corp.*,

---

[11]     As discussed, *see supra* note 9, the only protected action that Plaintiff has pled is reporting the alleged sexual harassment.  In Plaintiff's deposition he stated that he interpreted Pankey's comments as refencing *both* his complaint about Haggett *and* all the additional conversations he had with HR about Driscoll.  ECF No. 38-4 at 45–47.  To the extent that Plaintiff interpreted Pankey's comments as suggesting that his employment ended because he reported Driscoll's management style to HR, rather than because he reported sexual harassment, that interpretation of Pankey's words cannot support a finding of causation where the gravamen of Plaintiff's claim is that he was retaliated against for reporting sexual harassment.

No. 97-cv-0861, 1999 WL 1069525, at *1 (N.D.N.Y. Nov. 18, 1999) ("Plaintiff's subjective

interpretation of what had happened" and his "speculative conclusions" "do not rise to the proof

necessary to meet the evidentiary threshold for a prima facie case.").[12]

The Court has already concluded that Plaintiff cannot rely on temporal proximity alone to

establish causation, and now finds that Plaintiff has not put forward sufficient additional

circumstantial evidence to suggest retaliation.  *See Jeffreys*, 426 F.3d at 554 (to defeat summary

judgment "there must be evidence on which the jury could *reasonably* find for the plaintiff").

Accordingly, because Plaintiff cannot establish causation through either direct or indirect

evidence, Plaintiff cannot make out a *prima facie* case of retaliation and Defendant's motion for

summary judgment must be granted.[13]

### B.    Legitimate, Non-Retaliatory Reasons and Pretext

Even if the Court had found that Pankey's comments constituted sufficient circumstantial

evidence to meet his initial burden to establish his *prima facie* case, Defendant would still prevail

---

[12]    The Court has reached this conclusion after analyzing the transcript of Plaintiff's conversation with Pankey on its face, comparing it with Plaintiff's deposition testimony and NYSDHR Statement, and determining that no reasonable fact finder could credit Plaintiff's proffered interpretation of those comments.  While not necessary to the Court's analysis, the Court notes that Pankey submitted a signed affidavit in support of Defendant's motion.  In that affidavit, she states that her comments to Plaintiff "had absolutely nothing to do with the complaint [Plaintiff] had made months earlier concerning [] Haggett," that her "sole purpose was to convey to [Plaintiff] that he needed to act more professionally in future work environments," and that she meant Plaintiff "should be less combative with supervisors, engage in less gossip, and otherwise comport himself more professionally if he found himself in a position with which he was unhappy."  ECF No. 38-34.  This affidavit is both consistent with the Court's own understanding of Pankey's comments and with Plaintiff's understanding that Pankey was, at least in part, referencing Plaintiff's handling of his relationship with Driscoll.  Although the Court did not rely on this affidavit to reach the conclusions herein, it notes that the affidavit does provide additional support for those conclusions.

[13]    Even if the Court had concluded that the timeframe between Plaintiff's complaint about Haggett and the Challenged Actions was sufficient to allow an inference of causation, Plaintiff would not be able to make out a *prima facie* case of discrimination because it is undisputed that

because Plaintiff cannot establish that retaliation was a but-for cause of the Challenged Actions.

WSI has articulated a legitimate non-retaliatory reason that is supported by the record—

Plaintiff's poor performance—for the Challenged Actions.  ECF No. 38-38 at 19.  Plaintiff does

not dispute that WSI can meet its burden at this stage and so has waived any such argument.  *See*

*generally* ECF No. 41; *see also United States v. Maranatha Hum. Servs., Inc.*, No. 18-cv-8892,

2024 WL 967093, at *13 (S.D.N.Y. Mar. 5, 2024) (plaintiff who failed to respond to defendant's

argument that it could articulate a legitimate, non-discriminatory reason for its actions had

waived any such argument).

Accordingly, Plaintiff must show that WSI's proffered reason is merely pretext and that

retaliation was a but-for cause of the Challenged Actions.  *See Saji*, 724 F. App'x at 14.  To do

so, Plaintiff must show that "the unlawful retaliation would not have occurred in the absence of

the alleged wrongful action or actions of the employer."  *Bowen-Hooks v. City of New York*,

13 F. Supp. 3d 179, 231 (E.D.N.Y. 2014).  Plaintiff may do so "by demonstrating weaknesses,

implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate,

nonretaliatory reasons for its action" because "[f]rom such discrepancies, a reasonable juror

could conclude that the explanations were a pretext for a prohibited reason."  *Zann Kwan v.*

---

even Plaintiff himself felt he was not performing according to Driscoll's expectations soon after
he started in his role.  *See* ECF No. 41-1 ¶¶ 15, 47; ECF No. 38-4 at 42–43.  "[W]here timing is
the only basis for a claim of retaliation, and gradual adverse job actions began well before the
plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."
*Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).  Because the record
reflects that Plaintiff was underperforming before he reported Haggett and that he had received
feedback from Driscoll about his performance before he reported Haggett, Plaintiff would not be
able to rely on timing alone to support his *prima facie* case.  *See, e.g., Pasquarello v. Crothall
Healthcare, Inc.*, No. 21-cv-8732, 2023 WL 5714165, at *11 (S.D.N.Y. Sept. 5, 2023) (a
tangible act is not required to establish that progressive discipline of an employee began before
protected activity when "the undisputed evidence shows that [the employer was] beginning to
critique and discipline [p]laintiff long before" his complaints to HR).

*Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  However, it "does not matter whether Defendant['s] legitimate, non-retaliatory reason" for engaging in the Challenged Actions was "well-advised, sensible, or consistent with Plaintiff's understanding of the value of [his] employment" because an "employee's quarrel with an employer's decision does not undercut the legitimacy of the rationale for the decision, nor does it establish pretext."  *Beddoe v. Icahn Sch. of Med. at Mount Sinai*, No. 22-cv-3080, 2024 WL 989592, at *7 (S.D.N.Y. Mar. 7, 2024). Indeed, courts have "consistently held that they may not second-guess an employer's non-retaliatory business decisions, regardless of their wisdom, unless there is actual evidence that they were motivated by retaliation.  *Id.*

Plaintiff argues that he can establish that retaliation was a but-for cause of the Challenged Actions because:  (1) HR engaged in a "retaliatory campaign to unearth 'dirt'" about Plaintiff after he reported Haggett's behavior; (2) Plaintiff requested a transfer before his negative mid-year review so that he would no longer report to Driscoll but was told he could not transfer because of his "Needs Improvement" rating; (3) Plaintiff's mid-year review contained "false accusations"; (4) WSI "deviated from its usual procedure of initiating a 90-day PIP as a tool to improve performance" by instead giving Plaintiff a 30-day PIP that was not achievable and effectively forcing him to resign; (5) Pankey's comments during their last meeting "clearly indicate a pretext for retaliation based on the apparent animosity of the statements made"; and (6) HR did not conduct a legitimate investigation of his claims against Haggett, in a deviation from WSI's policies and procedures.  ECF No. 41 at 9–11.  The Court addresses each in turn.

First, Plaintiff's argument that HR tried to "unearth 'dirt'" on him after he reported Haggett is not supported by evidence properly before the Court.  *Id.* at 11.  To demonstrate that HR engaged in this behavior, Plaintiff primarily relies on handwritten notes that he refers to as

"HR Notes." ECF No. 41-2 ¶¶ 35–37; ECF No. 38-31. However, as discussed in Section I, *supra*, Plaintiff has provided no testimony or information about who prepared these notes, when they were prepared, or why they were prepared. Accordingly, Plaintiff has not demonstrated that the document would be admissible at trial, and the Court cannot rely on Plaintiff's counsel's unsupported assertions as to what the notes represent or consider this document in reaching its conclusions. *Kaur*, 688 F. Supp. 2d at 323; ECF No. 38-1. Plaintiff also argues that "Sonya Pankey did have HR reach out to [a former employee] and ask him if [Plaintiff] had sent him an inappropriate photo." ECF No. 41-2 ¶ 35. However, yet again, Plaintiff provides the Court with no admissible evidence from which the Court can conclude that this in fact happened.[14]

As support for this inference, Plaintiff cites to an email from July 22, 2019, that a WSI HR employee sent to the former employee in question that says "I wanted to touch base with you to see if you had time for a quick 5 min call? What is your availability today?" ECF No. 41-8. Plaintiff further cites to an email that the same WSI HR employee sent to Pankey eight days later with the subject line "Kyle McDonald feedback" that reads "[w]anted to check availability this week to have a quick 15 minute call on my feedback about the Kyle McDonald intake." *Id.* Plaintiff proffers no testimony, affidavit, or other information about these emails that would allow the Court to infer, as Plaintiff proposes, that: (1) there is any connection between the emails, which bear different subject lines and were sent eight days apart; (2) the first email to the

---

[14]    Plaintiff asserts in his SAMF that at trial, he "will subpoena [the former employee] to testify consistent with an email to counsel for WSI dated October 13, 2023 summarizing [the former employee's] anticipated testimony." ECF No. 38-37 ¶ 35. Neither the former employee's "anticipated testimony" nor the "email to counsel for WSI" has been put before the Court at this time—making anything the former employee *might* testify about "mere speculation" that cannot be considered in determining the instant motion. *See, e.g.*, *Vlahopoulous v. Roslyn Union Free Sch. Dist.*, No. 21-cv-0063, 2024 WL 1242087, at *5 (E.D.N.Y. Mar. 22, 2024) (to survive a summary judgment motion, the opposing party must cite to "particular parts of materials in the record" and cannot rely on "mere speculation or conjecture").

former WSI employee relates to Plaintiff; and (3) the emails, together, were part of a scheme to compile negative information on Plaintiff.  Absent additional evidence or testimony, no reasonable juror could conclude that these emails constitute evidence of a retaliatory campaign against Plaintiff.[15]

Second, Plaintiff argues that the fact he was denied a transfer to another department at WSI where he would not have to report to Driscoll is evidence of "inconsistencies" in WSI's proffered legitimate reason for his dismissal.  His argument appears to be largely based on the fact that he first requested a transfer before his mid-year review but then, after his mid-year review took place, was told that he could not transfer because of the negative review.  ECF No. 41 at 9.  Plaintiff does not explain how WSI's determination that it did not make sense to transfer an underperforming employee is inconsistent with its position that it engaged in the Challenged Actions because Plaintiff was performing poorly.  Indeed, there is significant evidence in the record, including Plaintiff's own testimony, to establish that both Plaintiff and his supervisor felt he was not performing according to expectations before his first transfer request.  *See* ECF No. 41-1 ¶¶ 15, 47; ECF No. 38-4 at 42–43.  While it is true that Plaintiff first raised his interest in transferring departments with HR in June of 2019, before he reported Haggett's behavior and before his negative review, it is clear from the record that during that June meeting, HR did not tell him that a transfer was an option but rather told him to discuss his request directly with Driscoll.  ECF No. 41-1 ¶¶ 25–26.  And, when Plaintiff raised his interest in transferring a second time in September of 2019, after he reported Haggett's behavior but before his mid-year

---

[15]    WSI's corporate representative testified that the allegations about Plaintiff and the former employee came from the former employee's sister who worked at WSI and mentioned it to others.  ECF No. 41-6 at 5.  WSI's corporate representative also testified that HR's investigation did not take place around the same time as Plaintiff's complaint about Haggett.  *Id.*

review, the record is clear that the HR employee with whom he spoke told him she would have to see if transferring was an option.  *Id.* ¶¶ 42–43.

The record does not reflect any material change in WSI's willingness to allow Plaintiff to transfer departments after he reported Haggett's behavior, and it is not clear to the Court how Plaintiff expects it, or any reasonable juror, to infer that being told he could not transfer because he had received a negative performance review is inconsistent with WSI's assertion that the Challenged Actions were the consequences of Plaintiff's poor performance.  Indeed, WSI's corporate representative testified that "when somebody does have performance issues that we believe may translate to another job, . . . for example, reporting issues, or . . . completing tasks, it would be hard to find him another job based off of those areas he needs to work on."  ECF No. 38-6 at 13.  Accordingly, Plaintiff cannot establish pretext based on his denied transfer request. *See Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 252 (N.D.N.Y. 2010) (mere speculation that defendant's denial of a work opportunity to plaintiff was not sufficient to demonstrate inference of pretext because plaintiff cannot use his own opinion to establish pretext).

Third, Plaintiff argues that his mid-year review was "peppered with false accusations," which show "inconsistencies" in WSI's proffered legitimate reasons for his dismissal.  ECF No. 41 at 9.  This assertion ignores the fact that Plaintiff himself acknowledged that at least some of Driscoll's feedback matched "ongoing conversations" they had been having about his performance.  ECF No. 38-4 at 42–43.  And, even if Plaintiff disagreed, in part, with Driscoll's assessment of his performance, his disagreement alone is not sufficient to show that retaliation, rather than his performance was the but-for cause of the Challenged Actions.  *See Miller v. Nat'l Ass'n of Secs. Dealers, Inc.*, 703 F. Supp. 2d 230, 247 (E.D.N.Y. 2010) (plaintiff could not discredit his supervisor's performance-related complaints through "his own conflicting

perceptions and opinions" because "[t]he relevant inquiry is not whether the performance-based justification for plaintiff's termination articulated by defendant is accurate or fair, but whether plaintiff can show any evidence that it was not the actual justification," which plaintiff "cannot accomplish . . . by stating his disagreement with his supervisors' negative assessment of his performance").

Fourth, Plaintiff argues that he can show pretext because WSI's usual procedure was to give 90-day PIPs as tools to improve performance and WSI deviated from this procedure in offering him a 30-day PIP that was allegedly unachievable. ECF No. 41 at 9. However, Plaintiff has not pointed to evidence sufficient to create a material issue of fact around whether WSI's decision to give him a 30-day PIP that was allegedly not attainable was *actually* a deviation from its usual procedure. Plaintiff argues that Haggett's testimony establishes that WSI's practice was to issue 90-day PIPs. *Id.* Haggett, however merely testified that PIPs "are a 30, 60, 90[-day] opportunity to identify areas for improvement in one's performance, set really clear standards and objectives, so [an employee] can actually meet that and then remain with the company," ECF No. 43-2 at 2, and that his personal approach to PIPs was to use them as a "90-day opportunity to improve [an employee's] performance," ECF No. 38-5 at 19. WSI's corporate representative, testified that the "ideal scenario" with a PIP is that it would "lay out items that [an employee] should be able to do within the timeframe outlined with the hopes" that the employee would succeed and "get off the plan." ECF No. 43-1 at 2. WSI's corporate representative also acknowledged, however, that at times when "somebody's in a role that they just can't do" because "it's a little over their heads or the expectations of the job [are] not something that they're able to perform," PIPs might be used as a tool to help an employee exit the company. *Id.*

at 2–3.  And, Plaintiff himself testified that "PIP has the worst reputation at Williams-Sonoma" and that PIPs were used "when you're trying to force someone out."  ECF No. 38-4 at 40.

This testimony, including Plaintiff's own deposition testimony, does not support Plaintiff's assertion that a 90-day PIP was *WSI's* usual procedure and not just *Haggett's* personal procedure (Haggett's procedure is irrelevant—Haggett was not Plaintiff's supervisor and did not put him on a PIP) or that PIPs were always intended to be attainable.  These unsupported assertions about WSI's alleged "usual practice[s]" are not sufficient to create a triable issue of fact.  Indeed, "[w]hether Defendant['s] actions were unreasonable, unfair, or even untrue," absent "any showing of retaliatory motive, they do not support Plaintiff's retaliation claim." *Bowen-Hooks*, 13 F. Supp. 3d at 232.  Because there is no evidence in the record sufficient to create a material dispute of fact regarding whether WSI deviated from its usual practice in putting Plaintiff on a 30-day allegedly unattainable PIP, this argument cannot establish pretext.

Fifth, Plaintiff argues that Pankey's comments during their October meeting demonstrate a pretext for retaliation.  As already discussed, *see supra* Section II.A, no reasonable finder of fact could interpret Pankey's comments as revealing a retaliatory animus behind Plaintiff's firing.  Indeed, Plaintiff's own uncertainty as to whether Pankey's comments were referencing his complaint about Haggett or his complaints to HR about Driscoll and her management undermines any argument that these comments can demonstrate that retaliation was a but-for cause of the Challenged Actions.  ECF No. 38-4 at 45–47.

Finally, Plaintiff argues that WSI deviated from its usual procedures by not properly investigating his complaint against Haggett, which raises questions about whether the investigation was conducted in good faith.  However, a flawed investigation alone cannot establish pretext absent evidence that the deficiencies in the investigation can be attributed to a

retaliatory motive.  *See Sharpe*, 756 F. Supp. 2d at 250 (plaintiff's claim that HR's investigation into her report about another employee "was flawed" was "insufficient to establish pretext" because "[e]ven if the investigation as flawed, . . . a faulty investigation is not in and of itself evidence of pretext").  Even assuming *arguendo* that WSI's investigation into Plaintiff's complaint was not up to WSI's usual standard, Plaintiff has elicited no testimony about the investigation sufficient to allow the Court to determine that any alleged flaws in the investigation were based on a retaliatory intent.  Nothing in Haggett's, Plaintiff's, or WSI's corporate representative's testimony about the investigation suggests that any alleged flaws in the investigation were due to retaliatory animus.  *See* ECF No. 38-4 at 30; ECF No. 38-5 at 5; ECF No. 41-6 at 2–3.  Plaintiff appears to allege that Pankey's comments to Plaintiff in October of 2019 somehow suggest that there was a retaliatory motive behind the whole investigation.  ECF No. 41 at 10.  However, Plaintiff points to no evidence that Pankey was involved in HR's investigation into his allegations or that she somehow influenced the events that occurred more than three months earlier.  Accordingly, Plaintiff has failed to demonstrate that any alleged flaws in HR's investigation into his complaint were motivated by retaliation.

WSI argues that it fired Plaintiff because of his performance, and Plaintiff has not met his burden of introducing admissible evidence sufficient to demonstrate that WSI's argument is merely pretextual and that retaliation was a but-for cause of the Challenged Actions. Accordingly, considering the undisputed facts of this case as supported by evidence in the record, the Court finds that a reasonable jury could not conclude that WSI's reasons for engaging in the Challenged Actions were pretextual, and Defendant's motion for summary judgment on Plaintiff's Title VII claim is granted.

### III.     Plaintiff's NYCHRL Claim

The Court has dismissed Plaintiff's sole federal claim and the only claim that remains is his retaliation claim under the NYCHRL.  Plaintiff does not allege any basis for the Court to exercise jurisdiction over his NYCHRL claim other than supplemental jurisdiction.  *See generally* ECF No. 19.  The exercise of supplemental jurisdiction is "within the sound discretion of the district court."  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013).  "District courts may use their discretion in deciding whether to exercise supplemental jurisdiction over state law claims after dismissing a plaintiff's only federal claims, so long as the federal claims were not dismissed for lack of subject matter jurisdiction."  *Probiv v. PayCargo LLC*, No. 22-cv-2907, 2023 WL 159788, at *5 (E.D.N.Y. Jan. 11, 2023); 28 U.S.C. § 1367(c)(3) (A district court "may decline to exercise supplemental jurisdiction" over a "state law claim[]" if the district court "has dismissed all claims over which it has original jurisdiction"); *see also Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021).  Accordingly, because the Court has dismissed Plaintiff's Title VII claim, the Court declines to exercise supplemental jurisdiction over his NYCHRL claim.

IV.   **<u>CONCLUSION</u>**

For the foregoing reasons, the Court GRANTS Defendant's motion seeking summary judgment as to Plaintiff's Title VII retaliation claim and declines to exercise supplemental jurisdiction over Plaintiff's NYCHRL retaliation claim.  Accordingly, Plaintiff's Title VII retaliation claim is dismissed with prejudice and Plaintiff's NYCHRL retaliation claim is dismissed without prejudice.  The Clerk of Court is respectfully directed to enter judgment consistent with this Order and to close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
  HECTOR GONZALEZ
  United States District Judge

Dated: Brooklyn, New York
        September 13, 2024